**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FLUSHING BANK,

      Plaintiff and Counterdefendant,

         v.

GREEN DOT CORPORATION and
GREEN DOT BANK,

      Defendants and Counterclaimants.

Case No. 13-cv-9120 (KBF) (AJP)

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**</u>
<u>**GREEN DOT CORPORATION AND GREEN DOT BANK'S**</u>
<u>**PARTIAL MOTION TO DISMISS FLUSHING BANK'S AMENDED COMPLAINT**</u>

Adam Siegartel
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900
E-mail: asiegartel@proskauer.com
*Attorneys for Defendants and Counterclaimants*
*Green Dot Corporation and Green Dot Bank*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................................ 1

**SUMMARY OF FLUSHING BANK ALLEGATIONS** ................................................. 2

**ARGUMENT** ...................................................................................................................... 4

    1.   Flushing Bank Failed To State A § 360-l Dilution Claim ...................................... 5

    2.   Flushing Bank Failed To State A Claim For Common Law Unfair Competition ........................... 9

**CONCLUSION** ................................................................................................................... 12

# TABLE OF AUTHORITIES

CASES                                                                                                                    PAGE(S)

*Allied Maint. Corp. v. Allied Mech. Trades, Inc.*,
    42 N.Y.2d 538 (1977) ........................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................5

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
    973 F.2d 1033 (2d Cir. 1992)......................................................................................5, 6

*CAC Group v. Maxim Group, LLC*,
    12 Civ. 5901 (KBF), 2012 U.S. Dist. LEXIS 148062 (S.D.N.Y. Oct. 10, 2012) ............12

*CBS Inc. v. Liederman*,
    866 F. Supp. 763 (S.D.N.Y. 1994).................................................................................7

*Empresa Cubana Del Tabaco v. Culbro Corp.*,
    97 Civ. 8399 (RWS), 2004 U.S. Dist. LEXIS 4935 (S.D.N.Y. Mar. 26, 2004) ..............6

*Gaddis Partners, Ltd. v. T3 Media, LLC*,
    12 Civ. 3516 (KEF), 2012 U.S. Dist. LEXIS 101946 (S.D.N.Y. July 19, 2012) .............4

*GMA Accessories, Inc. v. Croscill, Inc.*,
    06 Civ. 6236 (GEL), 2008 U.S. Dist. LEXIS 16052 (S.D.N.Y. Mar. 3, 2008)................6

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
    12 Civ. 7992 (KBF), 2014 U.S. Dist. LEXIS 5796 (S.D.N.Y. Jan. 15, 2014) .........10, 11

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
    04 Civ. 7203 (DLC), 2006 U.S. Dist. LEXIS 20787 (S.D.N.Y. Apr. 19, 2006) ..............9

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)........................................................................................11

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
    875 F.2d 1026 (2d Cir. 1989)......................................................................................5, 7

*Richemont N. Am., Inc. v. Huang*,
    12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sept. 24, 2013) ........9, 12

*Sage Realty Corp. v. Sage Grp., Inc.*,
    711 F. Supp. 134 (S.D.N.Y. 1989)..................................................................................6

*Sally Gee, Inc. v. Myra Hogan, Inc.*,
   699 F.2d 621 (2d Cir. 1983)..............................................................................5, 6

*Simington v. Lease Fin. Grp., LLC*,
   10 Civ. 6052 (KBF), 2012 U.S. Dist. LEXIS 25671 (S.D.N.Y. Feb. 28, 2012)..............4, 5, 12

*SMJ Grp. Inc. v. 417 Lafayette Rest. LLC*,
   06 Civ. 1774 (GEL), 2006 U.S. Dist. LEXIS 61645 (S.D.N.Y. Aug. 30, 2006)..................6, 7

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 214 (2d Cir. 2010)...................................................................................5

*Strange Music, Inc. v. Strange Music, Inc.*,
   326 F. Supp. 2d 481 (S.D.N.Y. 2004).......................................................................5

*Swatch Grp. (U.S.) Inc. v. Movado Corp.*,
   01 Civ. 0286 (RLC), 2003 U.S. Dist. LEXIS 6015 (S.D.N.Y. Apr. 9, 2003) .........................6

*Technomarine SA v. Jacob Time, Inc.*,
   905 F. Supp. 2d 482 (S.D.N.Y. 2012)...............................................................11, 12

*W.W.W. Pharm. Co. v. Gillette Co.*,
   984 F.2d 567 (2d Cir. 1993)...................................................................................9

*Welch Allyn, Inc. v. Tyco Int'l Servs. AG*,
   200 F. Supp. 2d 130 (N.D.N.Y. 2002) .......................................................................6

STATUTES

15 U.S.C. § 1125........................................................................................................9

Fed. R. Civ. P. 12...................................................................................................5, 9

N.Y. Gen. Bus. Law § 349..........................................................................................2

N.Y. Gen. Bus. Law § 360-l ............................................................................... passim

N.Y. Gen. Bus. Law § 368-d .....................................................................................5, 6

Defendants Green Dot Corporation and Green Dot Bank (collectively, "Green Dot") respectfully move to dismiss the following claims in Plaintiff Flushing Bank's Amended Complaint filed on February 28, 2014: (1) New York Trademark Dilution pursuant to N.Y. Gen. Bus. Law § 360-l; and (2) common law unfair competition.

## PRELIMINARY STATEMENT

Flushing Bank alleges that Green Dot's GOBANK word mark and logo (  ) are confusingly similar to and dilutive of Flushing Bank's IGOBANKING word mark and logo (  ).  In addition to its Lanham Act infringement claims that, although meritless, are arguably pled with the requisite specificity, Flushing Bank has included several state law claims that are not well-pled.  Green Dot previously moved to dismiss these state law claims, and Flushing Bank amended its complaint in response.  Flushing Bank's amendments, however, do not cure the deficiencies that Green Dot previously raised and that are renewed herein.

First, Flushing Bank's § 360-l state dilution claim should be dismissed because Flushing Bank has not sufficiently pled that its IGOBANKING marks fall into that special class of particularly well-known and strong marks that merit dilution protection.  Indeed, despite Flushing Bank having knowledge of Green Dot's position before Flushing Bank served its Amended Complaint, *Flushing Bank did not add a single allegation in its Amended Complaint addressing the purported strength of the IGOBANKING marks.*  Although this Court will accept well-pled factual allegations as true, conclusory statements and threadbare recitals are not similarly credited, and an objective reading of Flushing Bank's Amended Complaint reveals that not only is it spare and light on facts generally, but it is particularly speculative and cursory concerning whether the IGOBANKING marks have achieved sufficient strength and notoriety in

the marketplace to merit dilution protection.  Flushing Bank's allegations are discussed in greater

detail below, and because Flushing Bank has not provided a reasonable basis to infer that the

IGOBANKING marks are sufficiently strong and well-known, its § 360-l state dilution claim

should be dismissed (Flushing Bank has not alleged a federal dilution claim, only state).

Second, Flushing Bank's common law unfair competition claim should be dismissed

because bad faith is a required element of a common law unfair competition claim, and Flushing

Bank presents no plausible basis for this Court to reasonably infer that Green Dot adopted and is

using its GOBANK marks in bad faith.[1]

## SUMMARY OF FLUSHING BANK ALLEGATIONS

Flushing Bank alleges that both parties are using their respective word marks and logos in

connection with banking and related financial services, and as a result, Green Dot's GOBANK

word mark and logo are likely to be confused with and dilutive of Flushing Bank's

IGOBANKING word mark and logo.  *See* Flushing Bank Amended Complaint ("Am. Compl.")

at ¶¶ 1, 18, 20–21, 30, 50, 57 (Green Dot accepts Flushing Bank's allegations for purposes of

this motion only).  Flushing Bank brings claims for trademark infringement, unfair competition,

and false designation of origin under the Lanham Act; dilution under New York statutory law;

and trademark infringement and unfair competition under New York common law.  Additionally,

Flushing Bank seeks cancellation of Green Dot's federal registration covering the GOBANK

logo (Reg. No. 4,355,615), as well as an order that Green Dot's pending federal applications for

the "GOBANK" term and a second application for the logo be denied.  *Id.* ¶¶ 1, 18, 20–21.[2]

---

[1] Green Dot's prior motion also sought dismissal of Flushing Bank's claim for Deceptive Trade Practices pursuant to N.Y. Gen. Bus. Law § 349.  Flushing Bank did not include this claim in its Amended Complaint and that issue is now moot.

[2] Although the claims are without merit, Green Dot is not seeking to dismiss Flushing Bank's Lanham Act claims, its common law infringement claim, or its claim for cancellation or denial of registration.

Flushing Bank alleges in conclusory fashion that its IGOBANKING marks are "distinctive" (*id.* at ¶ 7), but no genuine detail is provided.  Similarly, when it comes to Flushing Bank's alleged advertising and promotional efforts on behalf of the IGOBANKING marks, Flushing Bank recites only cursory, vague, and extremely conclusory allegations, for example the following: (1) "Flushing [Bank] devotes substantial effort, time and resources to ensure the prestige and reputation for quality banking products and services associated with the IGOBANKING Marks;" (2) "As a result of years of use and extensive sales of services of the highest quality complemented by extensive advertising, promotion and press coverage, the IGOBANKING Marks have come to be recognized by consumers, as well as by members of the banking and financial industry, as a unique identifier of products and services originating exclusively from Flushing;" and (3) "Flushing [Bank] has extensively advertised and promoted its products and services under the IGOBANKING Marks through advertising campaigns, on the internet, in publications and in other forms of media coverage."  *See id.* at ¶¶ 13, 15, 16. Despite its sweeping claims of "substantial" and "extensive" efforts, Flushing Bank's Amended Complaint, like its initial Complaint, does not reference a single publication, advertisement, press clipping, or anything analogous in which the IGOBANKING marks have actually been promoted.  These are exactly the kinds of conclusory and threadbare allegations that should be rejected at the motion to dismiss stage.

Similarly, Flushing Bank alleges that its IGOBANKING marks have achieved renown, but it provides no detail to support its conclusory statements or introduce any plausibility. The most that Flushing Bank alleges are the following: (1) the "services bearing the IGOBANKING Marks are closely associated with Flushing's reputation in the eyes of the public and the trade;" (2) "since its launch in 2006, Flushing has realized ever-increasing success in its

sales of products and services bearing the IGOBANKING Marks in both customers and deposit balances;" and (3) "Flushing's IGOBANKING Marks and the services provided in connection with the IGOBANKING Marks have been recognized by Bankrate Top Tier 100 Highest Yields, Money Magazine 100 Best and reviewed favorably on a number of online sites, including DepositAccounts.com." *See id.* at ¶¶ 13–14. Similarly, although Flushing Bank alleges that its "services provided in connection with the IGOBANKING Marks represent almost ten percent of Flushing's total deposit portfolio and over twenty percent of consumer deposits," it is glaring that Flushing Bank does <u>not</u> allege even an approximation for "Flushing's total deposit portfolio" or "consumer deposits." *Id.* at ¶ 14. The reader has absolutely no idea how large – or how small – are these figures. Regardless, such figures would not address whether or not the IGOBANKING marks are sufficiently well-known to fall into that discrete class of particularly strong marks that merit dilution protection.

## ARGUMENT

A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Simington v. Lease Fin. Grp., LLC*, 10 Civ. 6052 (KBF), 2012 U.S. Dist. LEXIS 25671, at *20 (S.D.N.Y. Feb. 28, 2012) (Forrest, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In applying that standard, the court accepts as true all well-pled factual allegations, but does not credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted); *see also Gaddis Partners, Ltd. v. T3 Media, LLC*, 12 Civ. 3516 (KEF), 2012 U.S. Dist. LEXIS 101946, at *3 (S.D.N.Y. July 19, 2012) (Forrest, J.) (citing *Iqbal*, 556 U.S. at 678) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Sufficient facts must be alleged "to state a claim to relief that is plausible on its face." *See Simington*, 2012 U.S. Dist. LEXIS 25671,

4

at *19 (citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 214, 321 (2d Cir. 2010), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In sum, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *See Simington*, 2012 U.S. Dist. LEXIS 25671, at *19 (emphasis added) (internal quotations omitted).  Flushing Bank has not met this standard in connection with the claims at issue in this motion and those claims should be dismissed.

1.    Flushing Bank Failed To State A § 360-l Dilution Claim

To prove a violation of New York General Business Law § 360-l, "plaintiff's mark must possess a distinctive quality capable of dilution" and "plaintiff must show a likelihood of dilution."  *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989).  The purpose of the anti-dilution statute is "to prevent . . . the gradual whittling away of a firm's distinctive trademark or name." *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 544 (1977).[3]

The anti-dilution statute cannot be invoked for the protection of all marks.  The Second Circuit has stated that the bar for protection is high and that the statute "*protects only extremely strong marks*."  *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992) (emphasis added) (quoting *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983)) (internal quotations omitted); *see also Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 496 (S.D.N.Y. 2004) ("weak marks will not be subject to a dilution claim under this statute").

---

[3] Until 1997, New York's anti-dilution statute was N.Y. Gen. Bus. Law § 368-d, which was then repealed and N.Y. Gen. Bus. Law § 360-l was added.  Some of the caselaw cited in this section, for example, this *Allied Maintenance* decision, references § 368-d, but such decisions remain applicable.

Requiring marks to be "extremely strong" to merit protection under New York's anti-dilution statute is firmly established within this Circuit. *See, e.g., Bristol-Myers*, 973 F.2d at 1049; *GMA Accessories, Inc. v. Croscill, Inc.*, 06 Civ. 6236 (GEL), 2008 U.S. Dist. LEXIS 16052, at *37–38 (S.D.N.Y. Mar. 3, 2008) (quoting *Bristol-Myers*, 973 F.2d at 1049) (internal quotations omitted) (holding "mark is suggestive and thus possesses a moderate degree of inherent distinctiveness," but denying § 360-l protection because mark is not "extremely strong"); *SMJ Grp. Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774 (GEL), 2006 U.S. Dist. LEXIS 61645, at *12 (S.D.N.Y. Aug. 30, 2006) (dismissing dilution claims due to failure to allege marks are sufficiently recognized by the public); *Swatch Grp. (U.S.) Inc. v. Movado Corp.*, 01 Civ. 0286 (RLC), 2003 U.S. Dist. LEXIS 6015, at *19 (S.D.N.Y. Apr. 9, 2003) (finding that "mark [that] is only moderately strong in the infringement context . . . is not entitled to protection under § 360-l"); *Welch Allyn, Inc. v. Tyco Int'l Servs. AG*, 200 F. Supp. 2d 130, 150 (N.D.N.Y. 2002) (internal citations omitted) (quoting *Sally Gee*, 699 F.2d at 625) (internal quotations omitted) ("Nevertheless, the New York anti-dilution statute protects only extremely strong marks[.]"); *Sage Realty Corp. v. Sage Grp., Inc.*, 711 F. Supp. 134, 143–44 (S.D.N.Y. 1989) (noting "only the strongest, most well-established marks are protected by *§ 368-d* against dilution" and refusing protection under § 368-d); *see also Sally Gee*, 699 F.2d at 625 ("Federal trademark infringement standards relating to strength of mark were not established with the concerns of the New York anti-dilution statute in mind").

Courts have also held that "while the New York statute does not share the Lanham Act's requirement that the mark be famous, courts in this district have concluded that the standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for fame under the [Lanham Act]." *SMJ*, 2006 U.S. Dist. LEXIS 61645, at *10 (quoting *Empresa Cubana Del Tabaco v. Culbro Corp.*, 97 Civ. 8399 (RWS), 2004 U.S. Dist.

6

LEXIS 4935, *156–57 (S.D.N.Y. Mar. 26, 2004) (internal quotations omitted), *aff'd in part and rev'd in part on other grounds*, 399 F.3d (2d Cir. 2005)). Proof of a mark's strength must be established with reference to the general public and <u>cannot</u> be demonstrated by pointing to a mark's robustness within one particular locale or marketplace. *See Mead*, 875 F.2d at 1030 ("However, the fact that a mark has selling power in a limited geographical or commercial area does not endow it with a secondary meaning for the public generally."); *SMJ*, 2006 U.S. Dist. LEXIS 61645, at *11–12 (internal citation omitted) ("Neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution. Rather, plaintiffs must allege that their marks are sufficiently distinctive and famous in the eyes of the general public."); *CBS Inc. v. Liederman*, 866 F. Supp. 763, 770 (S.D.N.Y. 1994), *aff'd*, 44 F.3d 174 (2d Cir. 1995) (rejecting § 360-l claim because "the strength of [plaintiff's] mark is limited to the field of television production and there was no evidence of general public recognition").

Keeping in mind these holdings and the well-established principle that only a discrete category of marks are sufficiently well-known to merit New York dilution protection, it is clear that Flushing Bank has not presented a plausible basis to reserve a place for its IGOBANKING marks in that category. Flushing Bank's allegations regarding the notoriety of the IGOBANKING marks are completely conclusory and do not reasonably permit the inference that the IGOBANKING marks are strong, much less extremely strong.

For example, in Paragraph 7 of its Amended Complaint, Flushing Bank alleges that the IGOBANKING marks are "distinctive," but provides no support for this conclusion. The same goes for Flushing Bank's allegation, also in Paragraph 7, that "consumers have recognized the IGOBANKING Marks as service marks designating services of the highest quality originating

exclusively from Flushing." Flushing Bank gives this Court <u>no reason to believe</u> this speculative allegation.

As for Flushing Bank's allegations in Paragraphs 13–16, these are also conclusory and threadbare. Flushing Bank alleges that its marks have been "extensively advertised and promoted," and that "Flushing [Bank] devotes substantial effort, time and resources to ensure the prestige and reputation" of the services associated with the marks, but again, no examples are provided. Am. Compl. ¶¶ 13, 15. Considering that dilution protection is reserved for a special class of marks, such a showing would need to be thorough and a smattering would not be enough, and here Flushing Bank has provided nothing at all. Indeed, the fact that Flushing Bank added no allegations addressing the IGOBANKING marks' purported strength in its Amended Complaint *after* receiving Green Dot's prior motion concerning this issue is a tacit admission that the IGOBANKING marks are not sufficiently strong to merit dilution protection.

Flushing Bank's remaining allegations are in Paragraph 14 regarding percentages of total Flushing Bank deposits that flow through the IGOBANKING service, and Flushing Bank's inclusion in two undated "Top 100" rankings. But these allegations are simply not sufficient. For example, Flushing Bank does not allege the total Flushing Bank deposits of which the IGOBANKING service is a subset, and even if Flushing Bank did, simply providing a dollar figure for those deposits does not address whether the IGOBANKING marks are strong or extremely strong in the general marketplace. As for the two undated "Top 100" rankings, Flushing Bank cannot plausibly support a dilution claim based on the fact that two out of a great many publications have allegedly ranked the IGOBANKING services in the top 100 in some unspecific fashion. *See id.* ¶ 14. The same goes for Flushing Bank's allegation in Paragraph 14 concerning the service being "reviewed favorably on a number of online sites, including

DepositAccounts.com." *Id.*  This allegation is simply too meager, conclusory, and lacking in genuine detail to enable Flushing Bank to get past the Rule 12 pleading stage in connection with a dilution cause of action that is reserved for a discrete category of particularly strong and well-known marks.  Because not nearly enough has been presented to enable this court to reasonably infer the requisite strength and notoriety, Flushing Bank's § 360-1 dilution claim should be dismissed.[4]

    2.    <u>Flushing Bank Failed To State A Claim For Common Law Unfair Competition</u>

"Under New York common law, the essence of unfair competition is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods."  *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 04 Civ. 7203 (DLC), 2006 U.S. Dist. LEXIS 20787, at *100 (S.D.N.Y. Apr. 19, 2006) (internal citations omitted) (internal quotations omitted).  A claim for unfair competition under New York law "shares many common elements with the Lanham Act claims of false designation of origin and trademark infringement, including proof of actual confusion to recover damages, and proof of a likelihood of confusion for equitable relief."  *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993) (internal citations omitted).

However, although unfair competition under New York law "closely parallels the elements of unfair competition under the Lanham Act," there is a notable exception, namely, "there must be some showing of bad faith on the part of the defendants" for the New York unfair competition claim.  *See Richemont N. Am., Inc. v. Huang*, 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790,

---

[4] In addition to Flushing Bank's § 360-l claim failing as a matter of law in connection with Green Dot's GOBANK word mark and logo for the reasons just discussed, 15 U.S.C. § 1125(c)(6) (Section 43(c)(6) of the Lanham Act) also bars Flushing Bank's New York dilution claim as to Green Dot's GOBANK logo, as that logo is federally registered.  *See* Am. Compl., ¶ 18.  This statutory provision expressly instructs that a state dilution claim may not lie against a federally registered mark.

at *16 n. 15 (S.D.N.Y. Sept. 24, 2013) (Forrest, J.) (internal citations omitted) (internal quotations omitted); *see also Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 12 Civ. 7992 (KBF), 2014 U.S. Dist. LEXIS 5796, at *40 (S.D.N.Y. Jan. 15, 2014) (Forrest, J.) (holding that "[t]o prevail on a claim of unfair competition under New York law, a plaintiff must show (1) likelihood of confusion and (2) bad faith on the part of the defendants").

In this context, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Guthrie Healthcare*, 2014 U.S. Dist. LEXIS 5796, at *21 (internal citations omitted) (internal quotations omitted). As the *Guthrie* court explained in its citation to the Second Circuit's 1993 decision in *W.W.W. Pharm. Co.*, "*bad faith requires more than mere knowledge*, but rather evidence that the defendant intended to promote confusion between the products or appropriate the plaintiff's good will." *Id.* (emphasis added) (internal quotations omitted).

Here, Flushing Bank has only alleged Green Dot's bad faith in a conclusory manner and without any details that enable this Court to reasonably infer that Green Dot adopted and is using the GOBANK marks in bad faith and to sow confusion. First, and being as charitable to Flushing Bank's allegations as possible, Flushing Bank implies in Paragraph 22 that Green Dot's bad faith could be inferred from the fact that Green Dot did not respond to Flushing Bank's alleged July 25, 2013 cease-and-desist letter. As a preliminary matter, and as a matter of law, not responding to such correspondence could not suffice to show the requisite bad faith necessary to support a common law unfair competition claim, especially where that letter was not even sent until months after Green Dot started using the GOBANK mark and <u>after</u> Green Dot had already received its

federal registration for its GOBANK logo (Flushing Bank concedes in its Amended Complaint at Paragraph 18 that Green Dot's mark was registered on June 18, 2013).[5]

Second, and finally, Flushing Bank has added an allegation in Paragraphs 22 and 49 of its Amended Complaint that Green Dot adopted its GOBANK mark with knowledge of Flushing Bank's use and registration of the IGOBANKING mark.  Notably, however, nowhere in Flushing Bank's Amended Complaint does Flushing Bank expressly allege that such knowledge demonstrates bad faith, but even if Flushing Bank had done so, and even accepting the truth of that allegation for purposes of this motion, that very conclusory allegation regarding Green Dot knowledge remains insufficient to permit an inference of bad faith.  *See Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 495 (S.D.N.Y. 2012) (Forrest, J.) (dismissing common law unfair competition claim because plaintiff only included "a mere recitation of the legal standard for a bad faith action, which is insufficient to state a claim for unfair competition").

Flushing Bank's implicit allegation that Green Dot adopted its GOBANK mark in bad faith is also contradicted by Flushing Bank's concession (Amended Complaint at Paragraph 18) that Green Dot received a federal registration for its GOBANK mark in June 2013.  *See Guthrie Healthcare*, 2014 U.S. Dist. LEXIS 5796, at *23 (holding bad faith allegation contradicted by United States Patent & Trademark Office approving registration of defendant's challenged trademark).

---

[5] As a factual matter, the relevant personnel at Green Dot never received the cease-and-desist letter until long after Flushing Bank's alleged 10-day deadline passed because the letter was inexplicably addressed only to "Green Dot Corporation" and not to any particular recipient, despite the names of Green Dot's CEO, General Counsel, and other officers all being public record and easily accessible, as was the identity of Green Dot's outside counsel responsible for the GOBANK trademark filings at the U.S. Patent & Trademark Office.  *See* the cease-and-desist letter attached as Exhibit 1 to the Declaration of Adam Siegartel in Support of Defendants and Counterclaimants' Partial Motion to Dismiss Amended Complaint. This Court may properly consider the cease-and-desist letter because it was incorporated by reference within Flushing Bank's Amended Complaint.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (court may consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference" on a motion to dismiss).

In sum, because Flushing Bank has presented only conclusory allegations regarding bad faith, and because there are no allegations that permit the reasonable inference that Green Dot has indeed acted with the intent to sow confusion, Flushing Bank's common law unfair competition claim should be dismissed.  *See Richemont*, 2013 U.S. Dist. LEXIS 136790, at *16 n. 15; *Technomarine*, 905 F. Supp. 2d at 495.[6]

## **CONCLUSION**

For the reasons stated herein, Flushing Bank's §360-l and common law unfair competition claims should be dismissed with prejudice.  Especially considering that Flushing Bank already amended its complaint once following Green Dot's prior motion to dismiss, and thus presumably Flushing Bank would have rectified its deficiencies if able to do so, granting Flushing Bank leave to file a third complaint would be futile and not justified by Fed. R. Civ. P. 15.[7]

[Signature block on next page]

---

[6] Flushing Bank hinted in its initial Complaint (at Paragraph 21) that Green Dot's bad faith was demonstrated by Green Dot not responding to Flushing Bank's Trademark Trial and Appeal Board (TTAB) opposition before Flushing Bank filed its initial Complaint.  For the reasons discussed in Green Dot's prior motion, this was an insincere allegation because as Flushing Bank knew, and as evidenced by the TTAB materials that Green Dot attached to the Siegartel Declaration supporting Green Dot's prior motion (Exhibit 2 to that Declaration), Flushing Bank had consented to an extension of Green Dot's TTAB response deadline in light of the parties' settlement discussions, and Flushing Bank filed its initial Complaint in this action before that deadline.  Flushing Bank has implicitly conceded that Green Dot not filing a TTAB response could not possibly support a bad faith determination, as Flushing Bank has removed its "no TTAB response" allegation from its Amended Complaint (*compare* Paragraph 21 of initial Complaint and Paragraph 22 of Amended Complaint).

[7] *See CAC Group v. Maxim Group, LLC*, 12 Civ. 5901 (KBF), 2012 U.S. Dist. LEXIS 148062, at * 19–20 (S.D.N.Y. Oct. 10, 2012) (Forrest, J.) (denying leave to amend amended complaint because, *inter alia*, amendment would be futile and "plaintiff has been on notice of the alleged defects in his complaint from defendants' prior motion to dismiss"); *Simington*, 2012 U.S. Dist. LEXIS 25671, at *39–40 (denying leave to amend dismissed claims within amended complaint because amendment would be futile).

Dated: March 10, 2014                     PROSKAUER ROSE LLP
       New York, New York


                             By: __/s/ Adam Siegartel_____
                             Adam Siegartel
                             Eleven Times Square
                             New York, NY 10036
                             Tel: 212.969.3000
                             Fax: 212.969.2900
                             E-mail: asiegartel@proskauer.com

                             *Attorneys for Defendants and Counterclaimants*
                             *Green Dot Corporation and Green Dot Bank*