**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FLUSHING BANK,<br><br>      Plaintiff and Counterdefendant,<br><br>          v.<br><br>GREEN DOT CORPORATION and<br>GREEN DOT BANK,<br><br>      Defendants and Counterclaimants. | Case No. 13-cv-9120 (KBF) (AJP) |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS AND COUNTERCLAIMANTS GREEN DOT CORPORATION AND GREEN DOT BANK'S PARTIAL MOTION TO DISMISS FLUSHING BANK'S AMENDED COMPLAINT**</u>

Adam Siegartel
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900
E-mail: asiegartel@proskauer.com

*Attorneys for Defendants and Counterclaimants*
*Green Dot Corporation and Green Dot Bank*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ...........................................................................................................1

1.      Flushing Bank Failed To State A § 360-l Dilution Claim .................................1

        A.      Green Dot's Cited Summary Judgment Decisions Are Applicable..........................1

        B.      Flushing Bank's Cited Cases Included Far More Elaborate
                Allegations Regarding Trademark Strength. .............................................2

        C.      Courts Regularly Dismiss § 360-l Claims Due To
                Insufficient "Trademark Strength" Allegations .......................................4

2.      Flushing Bank Failed To State A Claim For Common Law Unfair Competition ................6

        A.      Flushing Bank's "Bad Faith" Allegations Concern Only Green Dot's Alleged
                Knowledge And Are Insufficient As A Matter Of Law ...........................6

        B.      Flushing Bank's Arguments In Its Opposition Are Not Persuasive ........................8

CONCLUSION.......................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. ABC, Inc.*,
   No. 06 Civ. 1747 (GBD), 2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007)...............5, 7

*Energy Intelligence Grp. v. UBS Fin. Servs.*,
   No. 08 Civ. 1497 (DAB), 2009 U.S. Dist. LEXIS 48495 (S.D.N.Y. May 22, 2009)............5, 6

*ESPN, Inc. v. Quiksilver, Inc.*,
   586 F. Supp. 2d 219 (S.D.N.Y. 2008)...................................................................................2

*Guthrie Healthcare System v. ContextMedia, Inc.*
   2014 U.S. Dist. LEXIS 5796 (S.D.N.Y. Jan. 15, 2014) .........................................................6

*Jones Apparel Grp. v. Piccone*,
   No. 94 Civ. 0754 (LMM), 1994 U.S. Dist. LEXIS 7607 (S.D.N.Y June 8, 1994)...................7

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
   590 F. Supp. 2d 500 (S.D.N.Y. 2008).....................................................................................7

*Playtex Prods. v. Georgia-Pac. Corp.*,
   390 F.3d 158 (2d Cir. 2004)....................................................................................................7

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
   No. 06 Civ. 1774 (GEL), 2006 U.S. Dist. LEXIS 61645 (S.D.N.Y. Aug. 30, 2006)...............4

*Substral Am., Inc. v. Gillette Interim Subsidiary, Inc.*,
   No. 79 Civ. 1240 (CBM), 1980 U.S. Dist. LEXIS 16516 (S.D.N.Y. Oct. 24, 1980)...............8

*TechnoMarine, S.A. v. Jacob Time, Inc.*,
   905 F. Supp. 2d 482, 2012 U.S. Dist. LEXIS 157994 (S.D.N.Y. 2012) ..................................9

*The Name LLC v. Ortiz*,
   No. 10 Civ. 3212 (RMB), 2010 U.S. Dist. LEXIS 121413 (S.D.N.Y. Nov. 16, 2010)............3

*Van Praagh v. Gratton*,
   No. 13-CV-375 (ADS) (AKT), 2014 U.S. Dist. LEXIS 10352 (E.D.N.Y. Jan. 28,
   2014) .......................................................................................................................................4

*W.W.W. Pharm. Co. v. Gillette Co.*,
   984 F.2d 567, 1993 U.S. App. LEXIS 1051, 25 U.S.P.Q.2d (BNA)
   1593 (2d Cir. N.Y. 1993)...................................................................................................6, 7

STATUTES & OTHER AUTHORITIES

15 U.S.C. § 1125(c)(6)...................................................................................................................6

Fed. R. Civ. P. 15 ...........................................................................................................................9

N.Y. Gen. Bus. Law § 360-1 ................................................................................... *passim*

Defendants Green Dot Corporation and Green Dot Bank (collectively, "Green Dot") respectfully file this Reply Memorandum of Law in further support of their motion to dismiss Flushing Bank's claims for New York trademark dilution and common law unfair competition.

## PRELIMINARY STATEMENT

Flushing Bank presents relatively few arguments in its opposition to which Green Dot must reply.  Flushing Bank has largely let the allegations in its Amended Complaint speak for themselves, and accordingly Green Dot refers this Court to Green Dot's initial moving papers. As discussed therein, Flushing Bank's allegations regarding the IGOBANKING marks' purported strength are formulaic and conclusory, and Flushing Bank has given this Court no reason to believe that the IGOBANKING marks are within that special class of particularly strong marks that merit dilution protection under New York law.  Similarly, Flushing Bank has not presented a plausible basis for this Court to infer that Green Dot selected and is using its GOBANK trademark in bad faith (*i.e.*, to exploit plaintiff's goodwill and sow confusion), a required element for common law unfair competition.  Accordingly, Flushing Bank's state dilution and common law unfair competition claims should be dismissed.

## ARGUMENT

### 1.     Flushing Bank Failed To State A § 360-l Dilution Claim

#### A.     Green Dot's Cited Summary Judgment Decisions Are Applicable:

Flushing Bank's dominant opposition argument is that Green Dot's cited summary judgment decisions are inapplicable to this motion to dismiss.  To be clear, Green Dot's position is not that the Rule 12 analysis mirrors the summary judgment analysis – of course the inquiries are different.  However, in the context of Flushing Bank's dilution claim, the many summary judgment decisions that Green Dot cited remain relevant because they demonstrate that it is

*firmly established* that only a particular class of marks are sufficiently strong to be diluted under New York law, namely, those marks that are "extremely strong."  *See* cases cited on pages 5–6 of Green Dot's March 10, 2014 Memorandum of Law In Support Of Its Partial Motion To Dismiss (the "Green Dot Moving MOL").  That is the standard to which Flushing Bank's pleading must conform, and because Flushing Bank's formulaic allegations do not permit this Court to infer that the IGOBANKING marks are within that discrete class of extremely strong marks capable of being diluted, Flushing Bank's § 360-l claim should be dismissed.

        B.    <u>Flushing Bank's Cited Cases Included Far More Elaborate Allegations</u>

<u>Regarding Trademark Strength</u>: Flushing Bank emphasizes three specific decisions in which motions to dismiss § 360-l claims were denied: the *Quiksilver*, *Name*, and *Van Praagh* decisions. *See* Flushing March 24, 2014 Opposition Memorandum of Law ("Flushing Bank Opposition MOL"), at 6–7.  The "trademark strength" allegations in those complaints, however, were far more elaborate and specific than the conclusory and vague allegations that Flushing Bank presented here.

       For example, as the *Quiksilver* court stated, the Counterclaim-Plaintiff in that case presented an "**exhaustive description**" of trademark strength and marketplace exposure. *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 228 (S.D.N.Y. 2008) (emphasis added). Flushing Bank cannot seriously contend that it presented an exhaustive description here. The *Quiksilver* Answer and Counterclaims is attached as Exhibit 1 to the accompanying declaration of Adam Siegartel ("Siegartel Reply Declaration"), and Paragraphs 16–26 include an elaborate description of the relevant mark's history of use, strength, and related issues.  *See also Quiksilver,* 586 F. Supp. 2d at 228 (emphasis added) (internal quotations omitted) (brackets in original) (reinforcing Green Dot's cited decisions from Moving MOL and holding that "[§ 360-l] *protects only extremely strong marks*").

Similarly, the plaintiff in *Name* presented a remarkably detailed recitation of the widespread print and television media coverage that its 40/40 trademarks had received.  As the court pointed out (quoting plaintiff's amended complaint), those marks had been featured in many publications including *Vanity Fair*, *Forbes*, and *People* magazines, and on several television shows including "Access Hollywood," "Extra," and the MTV Music Video Awards.  *See The Name LLC v. Ortiz*, No. 10 Civ. 3212 (RMB), 2010 U.S. Dist. LEXIS 121413, at *21 (S.D.N.Y. Nov. 16, 2010).  Additional specific examples were provided in the *Name* Amended Complaint itself, which is attached as Exhibit 2 to the Siegartel Reply Declaration.  *See* Paragraphs 22–24 (listing a total of 8 television shows and 18 third-party publications that featured plaintiff's trademarks, as well as 8 celebrities who had hosted events at plaintiff's nightclubs).

In stark contrast, *Flushing Bank did not allege the name of a single publication, television show, or any other media* coverage that ever featured the IGOBANKING marks.  Similarly, although Flushing Bank alleges that its IGOBANKING marks have been "extensively advertised and promoted," Flushing Bank did not provide a single example to support that statement.  *See* Flushing Bank Amended Complaint ("Am. Compl.") at ¶ 13; *see also* Green Dot Moving MOL, at 7–9 (cataloging and discussing Flushing Bank's various unspecific allegations).  In sum, Flushing Bank's conclusory allegations regarding the strength of the IGOBANKING marks do not permit the inference that the IGOBANKING marks are strong at all, much less extremely strong such that these marks can plausibly be diluted under New York law.  *See also Van Praagh* Complaint attached as Exhibit 3 to Siegartel Reply Declaration at ¶¶ 7–11 (plaintiff, a New York Times best-selling author, sufficiently alleged trademark strength via allegations concerning plaintiff's television shows, books, conferences, retreats, seminars, websites, services

offered, and other trademark uses); *Van Praagh v. Gratton*, No. 13-CV-375 (ADS) (AKT), 2014 U.S. Dist. LEXIS 10352, at *22 (E.D.N.Y. Jan. 28, 2014).

Although Flushing Bank claims in its opposition (at 7–8) that it did not need to add any "strength" allegations to its Amended Complaint following Green Dot's prior Rule 12 motion because its initial Complaint was sufficient, it is difficult to credit Flushing Bank's assertion considering the undeniable lack of detail.  It is much more logical to assume that Flushing Bank did not add these allegations because, put simply, there is nothing more that Flushing Bank can say.

      C.    <u>Courts Regularly Dismiss § 360-l Claims Due To Insufficient "Trademark Strength" Allegations</u>: In addition to Green Dot's cited summary judgment decisions that firmly establish that marks must be "extremely strong" before the marks may be diluted under New York law, Flushing Bank attempts to distinguish the *SMJ* Rule 12 decision that Green Dot cited in its moving papers at 6–7.  This decision, however, in which the court granted defendant's motion to dismiss a § 360-l claim, is squarely on-point, as the *SMJ* court held that "plaintiffs' allegations regarding continuity of use, level of sales, or association *do not establish the requisite level of distinctiveness in the general public*.  Neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution."  *See SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, No. 06 Civ. 1774 (GEL), 2006 U.S. Dist. LEXIS 61645, at *11 (S.D.N.Y. Aug. 30, 2006) (emphasis added).  Flushing Bank's Amended Complaint suffers from this very same defect and should be dismissed for the same reason.  *See also id.* at *10 (citation omitted) (internal quotations omitted) (holding that "while the New York statute does not share the Lanham Act's requirement that the mark be famous, courts in this district have concluded that the standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for fame under the [Lanham Act]").

Moreover, the *SMJ* decision is by no means an outlier, but rather just one example of courts within this Circuit granting motions to dismiss § 360-l claims for failure to sufficiently allege trademark strength.  *See, e.g., Energy Intelligence Grp. v. UBS Fin. Servs.*, No. 08 Civ. 1497 (DAB), 2009 U.S. Dist. LEXIS 48495, at *17 & n.4 (S.D.N.Y. May 22, 2009) (internal quotations omitted) (finding plaintiff failed to allege a state dilution claim because plaintiff's mark was not "extremely strong, or even distinctive"); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747 (GBD), 2007 U.S. Dist. LEXIS 5802, at *13–14 (S.D.N.Y. Jan. 29, 2007) (granting motion to dismiss § 360-l claim despite plaintiff's allegation "that her mark is unique and distinctive," and holding that this and the other allegations did not sufficiently plead that plaintiff's WHAT'S YOUR PROBLEM? mark was sufficiently strong).  In light of such decisions, and despite Flushing Bank's claims to the contrary, it is clear that courts will not deny a motion to dismiss a § 360-l claim simply because plaintiff included conclusory and formulaic "trademark strength" allegations.

For all of these reasons, and for the reasons discussed in Green Dot's Moving MOL (at 5–9), Flushing Bank's allegations regarding the strength of the IGOBANKING marks are simply too meager, conclusory, and lacking in detail to enable Flushing Bank to get past the Rule 12 pleading stage in connection with a dilution cause of action reserved for a discrete category of particularly strong and well-known trademarks.  Flushing Bank has not provided nearly enough to enable this

Court to reasonably infer the requisite strength and notoriety, and Flushing Bank's § 360-l dilution claim premised on its IGOBANKING marks should be dismissed.[1]

### 2.    Flushing Bank Failed To State A Claim For Common Law Unfair Competition

A.    Flushing Bank's "Bad Faith" Allegations Concern Only Green Dot's Alleged Knowledge And Are Insufficient As A Matter Of Law: In an attempt to support its claim of common law unfair competition, Flushing Bank alleges Green Dot's bad faith in two ways: first, by alleging that Green Dot did not respond to Flushing Bank's July 2013 cease-and-desist letter; and second by alleging that "Defendants adopted the Infringing Marks with full knowledge of Flushing's use and registration of the IGOBANKING Marks." Am. Compl. at ¶¶ 22, 49.

Whether these allegations are considered standing alone *or* in conjunction with each other, these allegations are insufficient as a matter of law to plead bad faith, because as this court held in *Guthrie Healthcare System v. ContextMedia, Inc.* through its citation to the Second Circuit's *W.W.W. Pharmaceutical Co. v. Gillette Co.* decision, "*bad faith requires more than mere knowledge*, but rather evidence that the defendant intended to promote confusion between the

---

[1] Flushing Bank's remaining arguments in support of its dilution claim are not persuasive.  First, Flushing Bank's claim that it adequately pled a likelihood of blurring has nothing to do with the "strength" issue – Flushing Bank's entire page of argument is irrelevant.  *See* Flushing Bank Opposition MOL, at 10.  A mark must be sufficiently strong before it may be blurred under New York law, and because Flushing Bank has not sufficiently alleged that its IGOBANKING marks are sufficiently strong, its follow-up "blurring" allegations cannot rehabilitate the issue.  *See Energy Intelligence Grp.*, 2009 U.S. Dist. LEXIS 48495, at *17 n.4 (internal quotations omitted) ("Because the Court finds that Plaintiffs' mark is insufficiently strong to support a claim under § 360-l, the Court need not consider the likelihood of dilution presented by Defendant's use of the mark Daily Oil.").

Second, as discussed in Green Dot's Moving MOL, at 9 n.4, 15 U.S.C. § 1125(c)(6) (Section 43(c)(6) of the Lanham Act) also bars Flushing Bank's New York dilution claim as to Green Dot's GOBANK logo, as that logo is federally registered.  *See* Am. Compl. at ¶ 18.  The plain language of this statutory provision expressly instructs that a state dilution claim may not lie against a federally registered mark, and Flushing Bank's citation to a single contrary Ninth Circuit decision from 2008 (at 10 n.1) should not trump that plain language.  *See* § 1125(c)(6) (emphasis added) ("The ownership by a person of a valid registration . . . *shall be a complete bar* to an action against that person, with respect to that mark, that (A) is brought by another person under the common law or a statute of a state; and (B)(i) seeks to prevent dilution by blurring or dilution by tarnishment; or (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.").

products or appropriate the plaintiff's good will."  No. 12 Civ. 7992 (KBF), 2014 U.S. Dist. LEXIS 5796, at *21 (S.D.N.Y. Jan. 15, 2014) (Forrest, J.) (emphasis added) (internal quotations omitted).

Because there are no allegations in Flushing Bank's Complaint that permit the inference that Green Dot selected and is using its GOBANK mark in order to promote confusion, Flushing Bank's common law unfair competition claim should be dismissed.  *See also id.* at *21 (internal quotations omitted) (noting that "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 525 (S.D.N.Y. 2008) (citation omitted) (quoting *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) (internal quotations omitted) (holding that "a defendant's refusal to abandon a mark in the face of a cease and desist letter" does not constitute bad faith).  Without more, and even putting to the side that Flushing Bank had not addressed its cease-and-desist letter to any recipient at Green Dot,[2] Flushing Bank's allegation of bad faith based on Green Dot's failure to reply to Flushing's cease-and-desist letter is insufficient.

As for Flushing Bank's allegation that Green Dot adopted the GOBANK mark with knowledge of the IGOBANKING mark, courts have repeatedly established that "[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith." *Playtex Prods. v. Georgia-Pac. Corp.*, 390 F.3d 158, 166 (2d Cir. 2004); *see also Arnold v. ABC, Inc.*, 06 Civ. 1747 (GBD), No. 2007 U.S. Dist. LEXIS 5802, at *1, 11  (S.D.N.Y. Jan. 29, 2007) (granting motion to dismiss and holding that knowledge alone provides an insufficient ground for an inference of bad faith); *Jones Apparel Grp. v. Piccone*, No. 94 Civ. 0754 (LMM), 1994 U.S. Dist. LEXIS 7607, at *12–14 (S.D.N.Y June 8, 1994) (granting Rule 12 motion to strike

---

[2] *See* Green Dot Moving MOL, at 11 n.5; Exhibit 1 to the Declaration of Adam Siegartel in Support of Defendants and Counterclaimants' Partial Motion to Dismiss Amended Complaint.

affirmative defense because bad faith was not sufficiently alleged and holding that knowledge of

a senior user's mark "cannot, standing alone, constitute bad faith."); *Substral Am., Inc. v. Gillette*

*Interim Subsidiary, Inc.*, No. 79 Civ. 1240 (CBM), 1980 U.S. Dist. LEXIS 16516, at *24–25

(S.D.N.Y. Oct. 24, 1980) ("The fact that defendants knew of the existence of Hans Smith's

registration of the design before commencing use of their design does not establish that they

acted in bad faith, nor does it constitute independent and substantive proof of infringement.").

      B.    <u>Flushing Bank's Arguments In Its Opposition Are Not Persuasive</u>:

Flushing Bank does not cite any cases to support its claim that knowledge of a senior user's mark

alone is sufficient to plead bad faith.  Instead, Flushing Bank claims that "[s]ince this is not a

motion for summary judgment . . . *Flushing has no duty at this time to demonstrate conclusive*

*evidence of bad faith* in order to state a claim for unfair competition under New York law."

*See* Flushing Bank Opposition MOL, at 13 (emphasis added).  However, this "conclusive

evidence" argument is absolutely not the correct standard at this Rule 12 stage.  Although Flushing

Bank is not required to "prove" anything at the pleading stage, it has pleading obligations

nevertheless, and Flushing Bank is obligated to present a plausible basis so that this court may

infer that Green Dot selected and is using its GOBANK trademark in bad faith.  Flushing Bank has

not done so and dismissal is warranted.  *See also* Green Dot's Moving MOL, at 11 (citing the

*Guthrie* decision and noting that Flushing Bank's bad faith allegation is contradicted by Flushing

Bank's simultaneous allegation in its Amended Complaint at Paragraph 18 that Green Dot received

a federal registration for its GOBANK mark in June 2013).

      Finally, Flushing Bank attempts to distinguish *TechnoMarine, S.A. v. Jacob Time, Inc.*,

a decision in which this Court dismissed a common law unfair competition claim due to

insufficient "bad faith" allegations.  Flushing Bank's explanation for why *TechnoMarine* is not

instructive, however, is not persuasive.  According to Flushing Bank, the *TechnoMarine* decision is not on-point because it "involved a defendant who was selling plaintiff's products without authorization, not a defendant whose own marks were directly infringing upon the plaintiff's marks."  Flushing Bank Opposition MOL, at 14.  But Flushing Bank did not provide any reason why this factual distinction is relevant, and indeed, it is logical to presume that a court would be *more likely* to find bad faith in the *TechnoMarine* context in which defendant was allegedly selling plaintiff's own product without authorization.  Regardless, a plaintiff is required to sufficiently plead bad faith, and like the plaintiff in *TechnoMarine*, Flushing Bank "is left with a mere recitation of the legal standard for a bad faith action, which is insufficient to state a claim for unfair competition."  905 F. Supp. 2d 482, 495 (S.D.N.Y. 2012) (Forrest, J.).

In sum, because Flushing Bank presented only vague allegations regarding bad faith, and because there are no allegations that permit the reasonable inference that Green Dot intended to trade on Flushing Bank's goodwill and sow confusion, Flushing Bank's common law unfair competition claim should be dismissed.

### CONCLUSION

For the reasons stated herein and in Green Dot's initial moving papers, Flushing Bank's § 360-l and common law unfair competition claims should be dismissed with prejudice and without leave to amend.  Because Flushing Bank already amended its complaint once following Green Dot's prior motion to dismiss, and presumably Flushing Bank would have rectified its deficiencies if able to do so, granting leave to file a third complaint would be futile and not justified by Fed. R. Civ. P. 15.  *See* caselaw cited in Green Dot Moving MOL, at 12 n.7.

[Signature block on next page]

9

Dated: April 3, 2014
      New York, New York

PROSKAUER ROSE LLP

By: _____

Adam Siegartel
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900
E-mail: asiegartel@proskauer.com

*Attorneys for Defendants and Counterclaimants*
*Green Dot Corporation and Green Dot Bank*