```
                                             USDC SDNY
                                             DOCUMENT
UNITED STATES DISTRICT COURT                 ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                DOC #: _____
-------------------------------------------X DATE FILED:  JUN 1 9 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FLUSHING BANK,                                :
                                             :
                    Plaintiff,               :
                                             :
        -v-                                  :        13 Civ. 9120 (KBF)
                                             :
GREEN DOT CORPORATION & GREEN                :        MEMORANDUM
DOT BANK,                                    :        DECISION & ORDER
                                             :
                    Defendants.              :
-------------------------------------------------------X
KATHERINE B. FORREST, District Judge:

On December 26, 2013, plaintiff Flushing Bank ("Flushing" or "plaintiff")

filed this action against defendants Green Dot Corporation and Green Dot Bank

(together, "defendants"). (ECF No. 1.)

On February 28, 2014, plaintiff filed an amended Complaint, alleging

trademark infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114,

unfair competition and false designation of origin under § 43 of the Lanham Act, 15

U.S.C. § 1125(a), trademark infringement and unfair competition under New York

State law, and trademark dilution and injury to business reputation under § 360-l

of the New York General Business Law. (First Amended Complaint ("FAC") ¶ 1,

ECF No. 28, Feb. 28, 2014.) Plaintiff also requests cancellation of a service mark

registration and a determination that pending applications for registration with the

United States Patent and Trademark Office ("USPTO") be denied pursuant to 15

U.S.C. § 1052(d). (Id.)

On March 10, 2014, defendants filed a partial motion to dismiss, arguing that

plaintiff has failed to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6) for its § 360-l dilution claim and for its common law unfair competition claim. (See Memorandum of Law in Support of Defendants Green Dot Corporation and Green Dot Bank's Partial Motion to Dismiss Flushing Bank's Amended Complaint ("Defs.' Mem.") at 1, ECF No. 30, Mar. 10, 2014.) That motion became fully briefed on April 3, 2014.

For the reasons set forth below, the Court hereby GRANTS defendants' partial motion to dismiss.

I.    BACKGROUND

Flushing "offers an extensive line of banking services to consumers, businesses, and public entities, including a full complement of deposit, loan[,] and cash management services, at its 17 banking locations throughout New York." (FAC ¶ 7.) Flushing also operates an online banking division, "iGObanking.com." (Id.)

According to Flushing, as early as November 2006 and continuously since that time, it has used the following trademarks: IGOBANKING, IGOBANKING.COM, and IGOBANKING.COM and Design marks (collectively, "IGOBANKING Marks" or "the Marks"). (Id.) Plaintiff alleges that consumers have long "recognized the IGOBANKING Marks as service marks designating services of the highest quality originating exclusively from Flushing." (Id.)

On October 23, 2007, Flushing obtained right, title, and interest in and to the marks IGOBANKING and IGOBANKING.COM in connection with "'[f]ull service banking services and online banking services provided via the Internet, namely

2

provision of savings accounts, checking accounts, money market accounts[,] and

certificates of deposit . . . and debit card services' in international class 36."  (Id. ¶¶

8-9.)  On April 29, 2008, Flushing obtained the right, title, and interest to the mark

IGOBANKING.COM and Design for the same such use.  (Id. ¶ 10.)

On June 18, 2013, defendant Green Dot Corporation registered the mark

GOBANK and Design for use in connection with a wide variety of banking services.

(FAC ¶ 18.)[1]

_____

[1] Specifically, the GOBANK mark and Design is registered for all of the following
uses: "[p]romoting banking services and debit, stored value and cash card usage
and sales through the administration of customer loyalty and incentive rewards
programs; providing financial service customer loyalty and incentive rewards
programs; providing a website that tracks information for debit cards and cash
cards" in international class 35; and "Debit card, cash card, and stored value card
services; banking services; financial services; cash-acceptance transaction services
for supporting the funding of prepaid debit cards; analysis and evaluation of the
creditworthiness of individuals; electronic payment services, namely, electronic
processing and transmission of bill payment data; providing funds replenishment,
banking, and electronic funds transfer services in connection with debit card
services that permit card holders to fund debit cards, make online and telephone
payment transactions, and pay for consumer services, debts, and bills; financial
investment services in the field of certificates of deposit; automated teller machine
(ATM) services; on-line banking services; payment processing services, namely,
processing electronic payments made through debit cards, cash cards, and stored
value cards; funding online cash accounts from prepaid debit card accounts;
electronic check transaction processing services; foreign exchange services, namely,
foreign exchange transactions, foreign exchange information services, and providing
for the exchange of foreign currency; issuance of bank checks and travelers checks;
providing information and consultation in the fields of debit, stored value, and cash
card services, debit cards, bill payment, and electronic check transaction processing
services, and online banking" in international class 36.  (FAC ¶ 18.)  Additionally,
cccording to Flushing, Green Dot Corporation "has a pending service mark
application for the GOBANK and Design mark for use in connection with additional
banking services for which . . . Green Dot Corporation has not yet begun using its
mark."  (Id. ¶ 20.)  "Green Dot also has a pending service mark application for
'GOBANK' without the design for use in connection with services similar to those

According to Flushing, in January 2013 or sometime thereafter, Green Dot Corporation and its banking subsidiary, Green Dot Bank, began using the mark GOBANK and Design. (Id. ¶ 19.)

On July 25, 2013, Flushing sent a cease and desist letter "demanding that defendants immediate cease and desist from using the 'GOBANK' mark, or any other confusingly similar mark, in connection with banking and financial services, and that Green Dot Corporation surrender its USPTO registration for cancellation and expressly abandon its pending USPTO applications." (Id. ¶ 22.) Flushing requested written confirmation within 10 calendar days that defendants had complied with Flushing's demand. (Id.)

Flushing received no response from defendants and on August 28, 2013, commenced a Cancellation Proceeding with the Trademark Trial and Appeal Board, requesting that Green Dot Corporation's registration be canceled on the ground that the registration creates a likelihood of confusion with Flushing's IGOBANKING Marks. (Id.)[2]

On January 17, 2014, Flushing filed requests to amend its registration certificates with the USPTO "to delete certain services on which the IGOBANKING Marks were not used." (Id. ¶ 11.) On February 20, 2014, the USPTO denied

---

listed in the registration and pending application for GOBANK and Design." (Id. ¶ 21.)

[2] The Cancellation Proceeding is suspended pending the outcome of this action. (FAC ¶ 11.)

4

Flushing's request to amend the registration certificate for IGOBANKING.COM and Design due to the pending Cancellation Proceeding. (Id.)

Flushing alleges that it "has extensively advertised and promoted its products and services under the IGOBANKING Marks through advertising campaigns, on the [I]nternet, in publications[,] and in other forms of media coverage." (Id. ¶ 13.) According to Flushing, it "has realized ever-increasing success in its sales of products and services bearing the IGOBANKING Marks in both customers and deposit balances." (Id. ¶ 14.) Indeed, "services provided in connection with the IGOBANKING Marks represent almost ten percent of Flushing's total deposit portfolio and over twenty percent of consumer deposits." (Id.) Flushing has "enhanced the services provided under the IGOBANKING Marks to include money market accounts with a tiered balance structure and Certificates of Deposit with terms up to and including ten years." (Id.) Flushing alleges that the IGOBANKING Marks and the services provided in connection with those marks "have been recognized by Bankrate Top Tier 100 Highest Yields, Money Magazine 100 Best[,] and reviewed favorably on a number of online sites, including DepositAccounts.com." (Id.)

Flushing contends that it "devotes substantial effort, time[,] and resources to ensure the prestige and reputation for quality banking products and services associated with the IGOBANKING Marks." (Id. ¶ 15.) According to Flushing, "[a]s a result of years of use and extensive sales of services of the highest quality complemented by extensive advertising, promotion[,] and press coverage, the

5

IGOBANKING Marks have come to be recognized by consumers, as well as by members of the banking and financial industry, as a unique identifier of products and services originating exclusively from Flushing." (Id. ¶ 16.)

## II.    LEGAL FRAMEWORK

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal 556 U.S. at 678. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments, dismissal is appropriate. Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

III. DISCUSSION

a. State Law Trademark Dilution Claim

i. Legal Framework

Pursuant to New York General Business Law section 360-l,

> Likelihood of injury to business reputation or of dilution
> of the distinctive quality of a mark or trade name shall be
> a ground for injunctive relief in cases of infringement of a
> mark registered or not registered or in cases of unfair
> competition, notwithstanding the absence of competition
> between the parties or the absence of confusion as to the
> source of goods or services.

In order to make out such a claim, two elements are required: "(1) a distinctive

mark capable of being diluted, and (2) a likelihood of dilution." Mobileye v. Picitup

Corp., 928 F. Supp. 2d 759, 782 (S.D.N.Y. 2013) (internal quotation marks and

citation omitted); see also Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.,

875 F.2d 1026, 1030 (2d Cir. 1989).

Under New York law, a plaintiff need not contend that a mark is famous in

order to make out a colorable claim that the mark is "capable of being diluted."

Mobileye, 928 F. Supp. 2d at 782. However, it is necessary to allege that the mark

is "extremely strong" – "either because of its inherently distinctive qualities or the

fact that it has acquired secondary meaning." Id. (citing Energy Intelligence Grp.,

Inc. v. UBS Fin. Servs., Inc., No. 08 Civ. 1497, 2009 WL 1490603 (S.D.N.Y. May 22,

2009)); see Bristol-Myers Squibb Co. v. McNeil – P.P.C., Inc., 973 F.2d 1033, 1049

(2d Cir. 1992) (explaining that New York law "protects only extremely strong

7

marks.").[3] In order to be distinctive, the mark must either be "unique" – i.e., "the product of arbitrariness or fancy" rather than "descriptive or generic." <u>Sage Realty Corp. v. Sage Grp., Inc.</u>, 711 F. Supp. 134, 143 (S.D.N.Y. 1989) (Leisure, J.). For a trademark to achieve "secondary meaning," the "<u>purchasing public</u> [must] associate[] that trademark with a single producer or source rather than just with the product itself." <u>Id.</u> (internal quotation marks and citation omitted) (emphasis in original).

With respect to the second element, dilution is "either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey." <u>Mead Data Cent.</u>, 875 F.2d at 1031. "Dilution by 'blurring' may occur where the defendant uses or modifies plaintiff's trademark to identify the defendants' goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." <u>U-Neek, Inc. v. Wal-Mart Stores, Inc.</u>, 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001).

ii. <u>Analysis</u>

In this case, Flushing has failed to provide factual allegations sufficient to support its claim that the IGOBANKING Marks are "extremely strong," as is necessary make out a dilution claim.

Flushing's allegations are threadbare and conclusory. For example, Flushing alleges that its IGOBANKING Marks are "distinctive" and that "consumers have recognized the IGOBANKING Marks as service marks designating services of the

---

[3] New York's anti-dilution statute formerly was N.Y. Gen. Bus. Law § 368-d.

Case 1:13-cv-09120-KBF  Document 40  Filed 06/19/14  Page 9 of 12

highest quality originating exclusively from Flushing." (FAC ¶ 7.) Yet, plaintiff fails to provide any factual allegations in support of these claims. Similarly, plaintiff contends that it "has extensively advertised and promoted its products and services under the IGOBANKING Marks through advertising campaigns, on the [I]nternet, in publications[,] and in other forms of media coverage." (Id. ¶ 13.) But, plaintiff does not list a single specific publication, Internet site, "or other form[] of media coverage" where its Marks have been featured.

While plaintiff does state that its IGOBANKING Marks and services related thereto "have been recognized by Bankrate Top Tier 100 Highest Yields, Money Magazine 100 Best[,] and reviewed favorably on a number of online sites, including DepositAccounts.com" (id. ¶ 14), this allegation is insufficient to make out a claim. Put simply, there is nothing from which the Court can plausibly infer that the Marks are either sufficiently unique, see, e.g., Sage Realty Corp. v. Sage Grp., Inc., 711 F. Supp. 134, 144 (S.D.N.Y. 1989) (Leisure, J.) (finding that "[t]here is nothing in the name 'Sage Realty Corporation' or the 'Sage' logo which indicates it is an inherently strong mark susceptible to dilution"), nor that the general public would recognize the Marks and associate them with Flushing. CBS Inc. v. Liderman, 866 F. Supp. 763, 770 (S.D.N.Y. 1994), aff'd 44 F.3d 174 (2d Cir. 1995) (rejecting the distinctiveness of plaintiff's mark because "the strength of the mark is limited to the field of television production and there was no evidence of general public recognition."). See Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d 621, 625 (2d Cir. 1983) (explaining that "the anti-dilution statute protects only extremely strong

9

marks" and citing as support New York State legislative history that referenced the following as instances of diluted trademarks: "Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, and Bulova gowns") (alteration omitted).

Flushing's allegation that the services related to the IGOBANKING Marks "represent ten percent of Flushing's total deposit portfolio and over twenty percent of consumer deposits" (id.) is similarly unavailing.  "Neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution." SMJ Grp., Inc. v. 417 Lafayette Rest. LLC, No. 06 Civ. 1774, 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) (Lynch, J.) (explaining that "allegations regarding continuity of use, level of sales, or association do not establish the requisite level of distinctiveness in the general public").

For all of these reasons, plaintiff's trademark dilution claim must be dismissed.

b. Common Law Unfair Competition Claim

"[T]o prevail on a claim of unfair competition under New York law, a plaintiff must show (1) likelihood of confusion and (2) bad faith on the part of the defendants." Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012); see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995) ("[T]he essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.") (alteration in

10

original) (internal quotation marks omitted); <u>Sly Magazine, LLC v. Weider Publ'ns L.L.C.</u>, 346 F. App'x 721, 723 (2d Cir. 2009).

To satisfy the bad faith requirement at the pleading stage, a plaintiff must "allege the bad faith misappropriation of a commercial advantage which belonged exclusively to [plaintiff]." <u>LoPresti v. Mass. Mut. Life Ins. Co.</u>, 820 N.Y.S.2d 275, 277, 30 A.D.3d 474 (2d Dep't 2006) (citations omitted); <u>see also Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 208-09 (S.D.N.Y. 2008) (citing cases). "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." <u>Star Indus., Inc. v. Bacardi & Co.</u>, 412 F.3d 373, 388 (2d Cir. 2005); <u>see also W.W.W. Pharm. Co. v. Gillette Co.</u>, 984 F.2d 567, 575 (2d Cir. 1993) (explaining that bad faith requires that the defendant "intended to promote confusion between the products or appropriate [plaintiff's] good will."); <u>O'Keefe v. Ogilvy & Mather Worldwide, Inc.</u>, 590 F. Supp. 2d 500, 525 (S.D.N.Y. 2008). "Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith." <u>Playtex Prods. v. Georgia-Pac. Corp.</u>, 390 F.3d 158, 166 (2d Cir. 2004).

In this case, plaintiff has not alleged that defendants selected and use its GOBANK mark in order to create or promote confusion. Indeed, there is nothing from which the Court can plausibly infer that defendants acted with the intent of exploiting the "good will and reputation" of plaintiffs. Moreover, while some courts have held that "[b]ad faith is presumed where the defendant intentionally copied

11

the plaintiff[']s mark," <u>C=Holdings B.V. v. Asiarim Corp.</u>, No. 12 Civ. 928, 2013 WL 6987165, at *12 (S.D.N.Y. Dec. 16, 2013) (citations omitted), plaintiff has not put forth any factual allegations to support an assertion that defendants intentionally copied the IGOBANKING Marks.

Plaintiff's common law unfair competition claim is thus dismissed.

IV.   CONCLUSION

For the reasons discussed herein, defendants' partial motion to dismiss is hereby GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 29.  Any motion to file an amended Complaint must be filed within seven calendar days (with a proposed amended Complaint attached).

The parties are reminded that a status conference is scheduled for **June 27, 2014** at **11:00 a.m.**


SO ORDERED.

Dated:        New York, New York
              June _19_, 2014

                                        _K B. For_
                                        KATHERINE B. FORREST
                                        United States District Judge